# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

GEORGE A. WOODS,                                Case No. 1:08-cv-809

    Plaintiff,                               Dlott, C.J.
                                             Black, M.J.
vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED**

This is a Social Security appeal brought pursuant to 42 U.S.C. § 405(g). At issue is whether the administrative law judge ("ALJ") erred in finding that Plaintiff was not entitled to Supplemental Security Income ("SSI"). (*See* Administrative Transcript ("Tr.") (Tr. at 15-26) (ALJ's decision)).

## I.

Plaintiff filed an application for a SSI on January 8, 2004, alleging a disability date of November 1, 2003 due to "stomach and breathing problems/ reading and writing." (Tr. 58-62). His application was denied initially and on reconsideration. Plaintiff then requested a hearing *de novo* before an ALJ. An evidentiary hearing, at which Plaintiff was represented by counsel, was held on May 6, 2008. (Tr. 354-95).

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

On July 8, 2008, the ALJ entered his decision denying Plaintiff's claim.  That decision stands as Defendant's final determination consequent to denial of review by the Appeals Council on September 18, 2008.   (Tr. 5-7).

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

    1.    The claimant has not engaged in substantial gainful activity since January 8, 2004, the application date (20 CFR 416.920(b) and 416.971 *et seq*.).

    2.    The claimant has the following severe combination of impairments: chronic obstructive pulmonary disease; abdominal pain/gastroesophageai reflux disease/gastritis; a dysthymic disorder; and borderline intellectual functioning (20 CFR 416.920 (c)).

    3.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920 (d), 416.925 and 416.926).

    4.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b).  Specifically, he can perform the requirements of work activity except as follows: He can lift/carry/push/pull/ a limit of 20 pounds occasionally, 10 pounds frequently.  He can stand and/or walk a limit of six hours in an eight-hour workday, but should not walk over a quarter mile at a time.  He should not crawl or climb ladders/ropes/scaffolds.  He can only occasionally stoop, kneel, crouch, climb ramps/stairs, and perform work requiring the forceful use of his lower extremities.  He should not work with concentrated exposure to extreme cold, extreme heat, high humidity, or fumes, noxious odors, dusts or gases.  He is able to understand, remember and carry out only short and simple instructions.  He is able to make only simple work-related decisions.  The job should not require reading or writing, or more than very simple math.

    5.    The claimant is unable to perform any past relevant work (20 CFR

416.965).

6. The claimant was born on August 13, 1959 and was 44 years old, which is defined as a younger individual ages 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is functionally illiterate. He is able to communicate in English (20 CFR 416.964.)

8. Transferability of jobs skills is not material to the determination of disability because using Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," wether or not the claimant has transferable jobs skills (See SSR 82-41 and 20 CFR 404 Part 404, Subpart P, Appendix 2)..

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 CFR 416.960 (c) and 416.966).

10. The claimant has not been under a "disability," as defined in the Social Security Act since January 8, 2004, the date the application was filed the (20 CFR 416.920 (g)).

(Tr. 21-26).

In summary, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to SSI.

On appeal, Plaintiff maintains that: (1) the ALJ erred in weighing the medical evidence; (2) the ALJ failed to give goods reasons for rejecting the opinion of Plaintiff's treating physician; (3) the ALJ erred in evaluating Plaintiff's pain, credibility, and subjective complaints; and (4) the ALJ committed various vocational errors. Each argument will be addressed in turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

Upon consideration of an application for disability benefits, the ALJ is guided by a sequential benefits analysis, which works as follows: At Step 1, the ALJ asks if the claimant is still performing substantial gainful activity; at Step 2, the ALJ determines if one or more of the claimant's impairments are "severe;" at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the ALJ determines whether or not the claimant can still perform his past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the ALJ – the ALJ determines, once it is established that the claimant

can no longer perform his past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Gwizdala v. Commissioner of Soc. Sec.,* No. 98-1525, 1999 WL 777534, at *2 n.1 (6th Cir. Sept. 16, 1999) (*per curiam*). If the ALJ determines at Step 4 that the claimant can perform his past relevant work, the ALJ need not complete the sequential analysis. *See* 20 C.F.R. § 404.1520(a). However, if the ALJ errs in finding that the claimant can perform his past relevant work, the matter should be remanded for further consideration under Step 5. *See Lauer v. Bowen*, 818 F.2d 636, 641 (7th Cir. 1987).

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

## A.

For his first two assignments of error, Plaintiff maintains that the ALJ erred in affording the most weight to the opinions of the state agency physicians, instead of giving deference to the opinion of Dr. Gray, Plaintiff's treatment physician. Plaintiff further asserts that the ALJ erred in failing to give "good reasons" for rejecting Dr. Gray's disability finding. Plaintiff's assertions are unavailing.

An ALJ must give the opinion of a treating source controlling weight if he or she finds that the opinion is "well-supported by medically acceptable clinical and laboratory

diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Commissioner of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)). Deference is due, however, only when the physician supplies sufficient medical data to substantiate his diagnosis and opinion. *Giddings v. Richardson,* 480 F.2d 652, 656 (6th Cir. 1976). Mere diagnosis of a condition is not indicative of a disabling functional debilitation. *See Varley v. Secretary of Health & Human Servs.,* 820 F.2d 777, 780 (6th Cir. 1987).

The ALJ must provide "specific reasons for the weight given to a treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson,* 378 F.3d at 544 (citing Soc. Sec. Rul. 96-2p). Nonetheless, the ultimate determination of whether a claimant is "disabled" rests with the Commissioner, and not with the treating physician. *See* Soc. Sec. Ruling 96-5p; *see also Varley,* 820 F.2d at 780.

Here, the records contains three Medical Assessment of Ability to do Work-Related Activities (Physical) forms completed Dr. Woods, each indicating that Plaintiff was limited to less than the full range of sedentary work due to COPD, shortness of breath, decreased stamina, and abdominal pain. In his decision, however, the ALJ gave little weight to Dr. Woods' assessments, finding that they were not supported by the medical evidence and were based primarily on Plaintiff's subjective complaints. (Tr. 24.) Instead, the ALJ adopted the functional limitations set forth by the state agency reviewing physicians (Drs. Morton and Cruz) – that Plaintiff could perform light level work. (Tr.

204-209). The state doctors relied on the findings of Dr. Nutter, who performed a consultative examination in April 2004. Dr. Nutter reported mostly normal clinical examination findings and found Plaintiff capable of performing light work. (Tr. 205, 208).

Plaintiff maintains that Dr. Gray's findings were entitled to deference because he was Plaintiff's treating physician. However, as the ALJ noted, Dr. Gray's opinions were not consistent, and he gave no explanations for his change in reasoning. (Tr. 23).

In May 2005, Dr. Gray opined that Plaintiff could sit for up to two to three hours, although on an earlier form he opined that Plaintiff had no sitting limitations; and then two years later, he opined that Plaintiff could sit seven hours in an eight hour workday; and then eight months after that, he opined that Plaintiff could sit three to four hours in a workday. (Tr. 211, 217, 317, 332-33). Dr. Gray gives no explanation for his varying opinions. See 20 C.F.R. § 416.927(d)(3) (the better an explanation a source provides for an opinion, particularly objective medical findings, the more weight the ALJ will give to that opinion).

Moreover, in May 2005, Dr. Gray opined that Plaintiff could lift one to two pounds (Tr. 215), yet, two years later, in August 2007, Dr. Gray opined that Plaintiff could lift no weight (Tr. 317), and just eight months later, he opined that Plaintiff could lift/carry up to five pounds (Tr. 332). Dr. Gray cites no examination findings in support of his extreme lifting restrictions.

Notably, Dr. Gray's opinion is completely inconsistent with consultative examiner Dr. Nutter's findings that Plaintiff had no motor weakness, normal strength, and actually

7

had a grip strength of 45-46 kg on the right and 48 kg on the left (1 kg = 2.2 lbs). (Tr. 171).. Furthermore, as noted by the Commissioner, while Dr. Gray stayed relatively consistent in his opinion that Plaintiff could only stand/walk one hour in an eight hour workday, his opinion was inconsistent with Plaintiff's own testimony. (Tr. 215, 317, 332). Specifically, as the ALJ noted, Plaintiff himself reported that he could walk a quarter mile without having to stop and that, if he took his time, he could walk a mile. (Tr. 168).

Plaintiff fails to address these inconsistencies, yet argues that worsening pulmonary function testing results supported Dr. Gray's opinion. (Doc. 8, p. 4-5). Plaintiff argues that since his pulmonary function testing results were "much worse," the ALJ should not have relied on the state agency physician opinions which were rendered prior to the worsening test results. *Id*. However, the record reveals that, especially after medication, Plaintiff's pulmonary function test results remained consistently in the moderately severe range (from 50-59%) – from the first test results in August 2004 to the last test results in April 2008. (Tr. 196-97, 318-19, 336).

More importantly, as noted by the ALJ, in order for Plaintiff to meet the requirements of Listing 3.02A (Chronic Obstructive Pulmonary Disease), he must have an FEV1 equal to or less than 1.35. Here, FEV1 readings in 2004 were 1.83, 1.92 and 1.97, readings in 2007 were 2.00 and 2.08, and readings in 2008 were 1.57 and 1.97.

Given this evidence, the ALJ reasonably rejected Dr. Gray's conclusory opinions. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) ("[T]he ALJ is not bound by

conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.") (internal quotation and citation omitted).

Additionally, Plaintiff's assertion that the ALJ failed to provided "good reasons" for rejecting Dr. Gray's opinion is unavailing. The ALJ clearly articulated his rationale for the weight afforded to Dr. Gray. As detailed above, the ALJ found that Dr. Grey's opinion proved inconsistent with the objective medical evidence and was not supported by clinical findings. (Tr. 24). *See Foster v. Halter*, 279 F.3d 348, 356 (6th Cir. 2001) (ALJ reasonably did not credit treating source opinion that was neither explained nor supported by medical or clinical findings).

Accordingly, the undersigned agrees that Dr. Gray's assessments are not supported by his clinical or laboratory findings and are inconsistent with his own treatment notes. The ALJ clearly articulated his reasoning for the weight assigned to the opinion of Dr. Gray, and the undersigned finds that his decision to given little weight to Dr. Gray disability finding is supported by substantial evidence.

**B**.

For his third assignment of error, Plaintiff maintains that the ALJ erred in evaluating his pain, credibility, and subjective complaints. Plaintiff specifically asserts that the ALJ improperly considered Plaintiff's failure to stop smoking in his credibility assessment. Plaintiff further argues that the ALJ failed to considered Plaintiff's use of oxygen and a nebulizer machine. Plaintiff's assertions are unavailing.

It is within the discretion of the ALJ - who actually meets with and takes testimony from an individual plaintiff -  to evaluate that plaintiff's credibility. As the Sixth Circuit has found: "[i]t is for the [Commissioner], not a reviewing court, to make credibility findings." *Felisky v. Bowen,* 35 F.3d 1027,1036 (6th Cir. 1994); *see also McGuire v. Commissioner of Soc. Sec.,* No. 98-1502, 1999 WL 196508, at *6 (6th Cir. Mar. 25, 1999) (*per curiam*) ("An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility").

Moreover, the failure to stop smoking against medical advice can be properly considered in assessing credibility. *See Galinis v. Commissioner of Social Sec.*, 2008 WL 360656, *8 (W.D.Mich.2008) (unpublished) ("The Sixth Circuit has indicated that where a claimant declines to stop smoking despite being instructed by her care providers otherwise is an appropriate factor to consider when assessing the claimant's credibility") (citing *Hall-Thulin v. Commissioner of Social Security*, 1997 WL 144237 at *1 (6th Cir., March 27, 1997) (quoting *Sias v. Secretary of Health and Human Services*, 861 F.2d 475, 480 (6th Cir.1988)) (claimant's failure to stop smoking was inconsistent with allegations

of disabling pain and limitation); *Mullins v. Secretary of Health and Human Services*, 836 F.2d 980, 985 (6th Cir.1987) (same).

Furthermore, as noted by the Commissioner, although Plaintiff claims that he has to use a nebulizer machine, other than his testimony, he provides no support for his assertions. (Doc. 8, p. 5) (citing Tr. 365). *See* 20 C.F.R. § 416.929(a) (a claimant's statements about his or her pain or symptoms will not alone establish that he or she is disabled). Moreover, the mere fact that an individual undergoes a certain treatment does not render that person *per se* disabled as Plaintiff seems to suggest.

The same can be said regarding Plaintiff's assertions that he has to use oxygen at night. While he does present a prescription for use of oxygen at night, Plaintiff fails to explain how use of oxygen at night renders him disabled. *See* 20 C.F.R. § 416.912 (burden of proof is on claimant to prove that he is disabled).

As noted above, the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). The ALJ properly evaluated Plaintiff's allegations in accordance with controlling law, and he reasonably concluded that they were not fully credible. The ALJ's credibility finding is entitled to deference and thus should be affirmed. *See Jones v. Commissioner of Social Security*, 336 F.3d 469, 476 (6th Cir. 2003) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while

testifying.").

## C.

As his last assignment of error, Plaintiff maintains that the ALJ's hypothetical questions to the vocational expert were improper because they did not include Plaintiff's use of a nebulizer machine. Plaintiff further maintains that the skill level for the light jobs identified by the vocational expert were inconsistent with their descriptions in the Dictionary of Occupation Titles (DOT). Plaintiff's arguments are not well-taken.

With respect to Plaintiff's use of a nebulizer machine, as stated above, the mere fact that Plaintiff may use a nebulizer does not render him disabled. Moreover, Plaintiff has provided no evidence that he would have to use a nebulizer so frequently that he would not be able to work. *See* 20 C.F.R. § 416.912 (burden of proof is on claimant to prove that he is disabled). In any event, the VE testified that, in his experience, individuals are able to use a nebulizer and still work (Tr. 384).

Accordingly, contrary to Plaintiff's assertion, the hypothetical questions presented to the VE accurately reflected Plaintiff's impairments and limitations as found by the ALJ and as supported by substantial evidence in the record. The ALJ was only required to incorporate into the hypothetical questions those limitations that he had accepted as credible. *See Stanley v. Secretary of Health & Human Servs.,* 39 F.3d 115, 118-19 (6th Cir. 1994). Furthermore, the ALJ did not find Plaintiff's complaints of total disability to be credible. Thus, the ALJ is not obliged to incorporate unsubstantiated complaints. S*ee Hardaway,* 823 F.2d at 927-28.

Plaintiff further maintains that some of the light jobs the VE identified required more skill level than unskilled work as their specific vocational preparations (SVP) were over 1 or 2, according to the Dictionary of Occupational Titles (DOT). *See* Social Security Ruling (SSR) 00-4p (unskilled work = SVP of 1 or 2; semi-skilled work = SVP of 3-4; skilled work = SVP of 5-9).

However, as noted by the Commissioner, despite the fact that some of the jobs identified are noted by the DOT as having higher level skill levels, substantial evidence still supports the ALJ's decision as the VE identified thousands of jobs which were both light and unskilled per the DOT (i.e., small product assembler – DOT # 706.684-022 – 1,000 jobs locally, 300,000 jobs nationally; and bench assembler – DOT # 706.684.042 – 4,500 jobs locally, 350,000 jobs nationally) (Tr. 25, 382). *See Hall v. Bowen*, 837 F.2d 272, 273, 275-76 (6th Cir. 1988) (1,350 jobs is a significant number of jobs).

Lastly, Plaintiff argues that the reading requirements for unskilled work, as defined by the DOT, exceed his ability to read as he is illiterate. Plaintiff's assertion lacks merit. *See Warf v. Shalala*, 844 F. Supp. 285, 289-90 (W.D.Va. 1994) (affirming Court's finding that plaintiff could perform light work, even though plaintiff was illiterate and borderline mentally retarded and, as such, was unable to read 190-215 words per minute). Furthermore, Plaintiff ignores the fact that, in the past, he performed both unskilled and semi-skilled work (which, per the DOT, required a reading ability in excess of that which is required for unskilled work).

Here, as previously discussed, the ALJ's hypothetical question accurately

13

portrayed the limitations supported by the evidence, and the VE's response provided substantial evidence to support the ALJ's finding that Plaintiff could perform a significant number of jobs.

For the foregoing reasons, Plaintiff's assignments of error are without merit. The ALJ's decision is supported by substantial evidence and should be affirmed.

### IT IS THEREFORE RECOMMENDED THAT:

1. The decision of the Commissioner is **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and should be **AFFIRMED.**

2. As no further matters remain pending for the Court's review, this case should be **CLOSED.**

Date: December 10, 2009                     s/Timothy S. Black
                                                                                  Timothy S. Black
                                                                                   United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

GEORGE A. WOODS,                          Case No. 1:08-cv-809

       Plaintiff,                              Dlott, C.J.
                                                    Black, M.J.
vs.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.


**NOTICE**

       Attached hereto is the Report and Recommended Decision of the Honorable Timothy S. Black, United States Magistrate Judge. Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations **within 14 days** after being served with this Report and Recommendation. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections **within 14 days** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).